UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-HC-2287-D

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BLAKE CHARBONEAU | RESPONDENT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW |

The Respondent, Blake Charboneau, by and through undersigned counsel, respectfully requests that the Court enter the following findings of fact and conclusions of law in this matter, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## I.   INTRODUCTION

On December 3, 2015, Petitioner United States of America ("the government") initiated this proceeding seeking to have Respondent Blake Charboneau ("Respondent" or "Mr. Charboneau") civilly committed as a sexually dangerous person under the Adam Walsh Child Protection and Safety Act of 2006 ("the Act"), codified at 18 U.S.C. §§ 4247–4248. [DE 1.] Mr. Charboneau completed a 36-month revocation sentence that expired on February 21, 2016, and he currently is detained at FCI-Butner Medium I awaiting the outcome of this proceeding. *Id.* Pursuant to 18 U.S.C. § 4247(d), the Court conducted an evidentiary hearing on January 27, 2017.

After considering the testimony at the evidentiary hearing, the evidentiary record, and the parties' submissions, this Court concludes that the Government has failed to establish by clear

1

and convincing evidence that Respondent is sexually dangerous to others as required by the Act and the Constitution.

## II.      FACTUAL BACKGROUND

### A.      Personal History

Mr. Charboneau, who currently is 57 years old, was born in North Dakota and grew up on the Devil's Lake Sioux Reservation. [Respondent Exhibit (RE) 2 at 1, 4.] He is the fifth of thirteen children. [*Id.* at 4.] Mr. Charboneau began abusing inhalants and alcohol as an adolescent or young teen, which led to problems in school, in-patient treatment, and multiple encounters with the law. [*Id.* at 5.] Mr. Charboneau's inhalant abuse ceased in his twenties, but Mr. Charboneau did use alcohol as late as 2003. [*Id.* at 5, 8.] Mr. Charboneau's work history is spotty, with his longest employment as a dishwasher from 2000 to 2003. [*Id.* at 5.] Mr. Charboneau has had at least one significant relationship with an adult woman, which may have produced two children. [*Id.* at 6.][1] Mr. Charboneau's adult arrest record is as follows:

| | |
|---|---|
| 5/12/78 | Protective Custody |
| 8/6/79 | Disorderly Conduct |
| 10/10/79 | Protective Custody |
| 4/22/81 | Protective Custody |
| 10/21/81 | Disobedience to Lawful Order of Court |
| 4/3/82 | Rape and Assault* (sentenced to 18 months) |
| 4/5/82 | Disorderly Conduct |

---

[1] Records indicate that Mr. Charboneau fathered two children, but they also differ as to whether he has been confirmed as the biological father.

2

| Date | Offense |
|---|---|
| 4/21/82 | Littering |
| 4/26/82 | Protective Custody |
| 4/26/82 | Public Intoxication |
| 5/1/82 | Petty Larceny |
| 5/6/82 | Disobedience to Lawful Order of Court |
| 7/6/82 | Assault |
| 9/4/84 | Resisting Lawful Arrest, Disorderly Conduct, Public Intoxication |
| 6/24/85 | Public Intoxication, Liquor Violation |
| 9/2/85 | Assault and Battery |
| 1/28/86 | Disorderly Conduct |
| 3/5/86 | Public Intoxication |
| 3/10/86 | Liquor Violation |
| 4/9/86 | Disorderly Conduct |
| 6/16/86 | Warrant for Contempt of Court |
| 9/26/86 | Disorderly Conduct |
| 9/26/86 | Detox |
| 10/25/86 | Fleeing on Foot |
| 3/10/87 | Warrant for Failure to Pay |
| 3/29/87 | Detox |
| 4/15/87 | Public Intoxication |
| 8/12/87 | Liquor Violation, Public Intoxication |
| 12/15/87 | Pedestrian on Roadway Without Regard for Safety |

| | |
|---|---|
| 6/20/88 | Disorderly Conduct |
| 7/31/88 | Engaging in a Sexual Act by Using Force* (paroled 2000) |
| 8/2/88 | Disorderly Conduct |
| 7/12/03 | Second Degree Rape, Attempted Second Degree Rape* (received 10 years) |
| 10/28/04 | Violation of supervised release (36 months at expiration of 10 years) |

[Government Exhibit (GE) 3 at 10-11 (sexual crimes marked with an asterisk).] Mr. Charboneau's entire criminal record is comprised of alcohol-related offenses. [RE 2 at 6.]

Mr. Charboneau is in good physical health. [*Id.* at 5.] Mr. Charboneau does struggle with language and finding the right words to express himself. Although his older records indicate that he may have been functioning in the borderline intellectual range, the BOP found that his IQ was 91 in 2016. [GE 26 at 4.] Mr. Charboneau has been incarcerated continuously since 2003, and he has received only one minor infraction. A model inmate, he has not consumed any alcohol since 2003. [RE 2 at 9.] Mr. Charboneau volunteered to participate in the Commitment and Treatment Program ("CTP") at Butner, and he is currently enrolled as a participant. [GE 23.] Additionally, he voluntarily attends weekly Alcoholics Anonymous meetings.

### B. Sexual Offense History

Mr. Charboneau has three convictions for sexual assault-type crimes, one from 1982 (for which he received 18 months in prison), one from 1988 (for which he served approximately 12 years), and one from 2003 (for which he received a 10-year sentence and a 3-year revocation sentence). He also has one unadjudicated sexual assault from 1987. [RE 2 at 6-9.]

4

In 1982, Mr. Charboneau was charged with rape and assault. He pleaded guilty to assault and received a sentence of 18 months. The victim reported that Mr. Charboneau came into her apartment, ripped her nightgown, hit her, and penetrated her. [*Id.* at 6-7.]

In 1987, during a bond hearing on a liquor violation charge, testimony at a detention hearing revealed an allegation that Mr. Charboneau had broken into a home, ripped a woman's clothes, and attempted to rape her until her husband intervened. [*Id.* at 7.]

In 1988, Mr. Charboneau was charged with engaging in a sexual act by using force. He was found guilty and sentenced to 168 months incarceration and 5 years of supervised release. He received parole in 2000. The victim, Mr. Charboneau's 10-year-old daughter, reported that after a day of drinking, Mr. Charboneau slapped her, took off her clothes, overpowered her, and raped her. [*Id.* at 7-8.]

Following his release in 2000, Mr. Charboneau lived successfully in a halfway house, going to treatment and working as a dishwasher. Because of his progress, he moved into an apartment in 2003. [*Id.* at 9.]

In 2003, Mr. Charboneau was arrested and charged with second degree rape and attempted second degree rape. He pleaded to sexual contact with a person incapable of consent, and he received a 10-year sentence in the South Dakota Department of Corrections, followed by a 3-year revocation sentence in the BOP. The victim reported that Mr. Charboneau and she were drinking on the day of the assault. She reported that she fell asleep and awoke to Mr. Charboneau performing oral sex on her. Mr. Charboneau then left the apartment but returned later, pulled off her shorts and underwear and attempted to rape her. Mr. Charboneau maintained that the two of them had a prior physical, consensual relationship. [*Id.* at 8-9.]

5

Mr. Charboneau's criminal sentence expired on February 21, 2016. When released, Mr. Charboneau will commence a two-year term of federal supervised release.

## III. DISCUSSION

The Adam Walsh Act provides for the civil commitment of "sexually dangerous person[s]." 18 U.S.C. § 4248. In order to prove that Mr. Charboneau is a "sexually dangerous person," the government must prove three elements by clear and convincing evidence: (1) Mr. Charboneau previously "engaged or attempted to engage in sexually violent conduct or child molestation"; (2) Mr. Charboneau currently "suffers from a serious mental illness, abnormality, or disorder" as a result of which; (3) Mr. Charboneau "would have serious difficulty i00n refraining from sexually violent conduct or child molestation if released." *United States v. Springer*, 715 F.3d 535, 538 (4th Cir. 2013) (quoting from 18 U.S.C. §4247(a)(5)-(6), and *United States v. Hall*, 664 F.3d 456, 463 (4th Cir. 2012)). Clear and convincing evidence is evidence "of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." *United States v. Springer*, 715 F.3d 535, 358 (4th Cir. 2013) (citing *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 450 (4th Cir. 2001).

Four experts testified at the evidentiary hearing. Joseph Plaud, Ph.D. testified that Mr. Charboneau did not meet criteria for commitment, while Gary Zinik, Ph.D., Christopher North, Ph.D., and Heather Ross, Ph.D. testified that Mr. Charboneau did meet criteria for commitment under the Act. Dr. Kara Holden was also called as a witness during the government's case-in-chief, and Mr. Charboneau testified on his own behalf.

6

### A. Sexually Violent Conduct or Child Molestation

The Court finds that the first criterion for commitment under the Act, that Mr. Charboneau has "engaged or attempted to engage in sexually violent conduct or child molestation" in the past, is satisfied. 18 U.S.C. § 4247(a)(5). All of the experts agree that Mr. Charboneau engaged in sexually violent behavior, and Mr. Charboneau does not dispute that the government has proven the first element.

### B. Serious Mental Illness, Abnormality, or Disorder

To meet its burden of establishing that Mr. Charboneau is "sexually dangerous to others," the government must also prove that he "suffers from a serious mental illness, abnormality, or disorder." 18 U.S.C. § 4247(a)(6). All four experts agree that Mr. Charboneau suffers from alcohol use disorder and inhalant use disorder. Dr. Zinik also diagnosed Mr. Charboneau with other specified personality disorder, relying heavily on his language issues. [GE 7 at 22-23.] The Court finds that Dr. Zinik did not offer a compelling explanation for this diagnosis, and instead credits the other experts' conclusion that Mr. Charboneau does not suffer from a personality disorder. The Court credits Dr. Plaud who testified that Mr. Charboneau's language difficulties could better be explained as residual issues from past inhalant use.

Accordingly, the Court finds that Mr. Charboneau does not suffer from a paraphilic disorder or a personality disorder, but finds that Mr. Charboneau currently suffers from alcohol use disorder. The Court also finds that Mr. Charboneau suffers from inhalant use disorder, but the experts testified in agreement that this disorder would not cause Mr. Charboneau serious difficulty refraining from reoffending. The Court now turns to whether Mr. Charboneau's alcohol use disorder is currently a serious mental disorder.

7

"A diagnosis of [a disorder] is merely the starting point for the court to consider the true thrust of the § 4247(a)(6) inquiry—whether on a case-specific basis, the respondent's underlying condition constitutes a serious functional impairment." *United States v. Caporale*, 701 F.3d 128, 137 n.4 (4th Cir. 2012). Additionally, there must be a causal link between the person's mental disease or defect and their sex offending. The Act itself defines sexually dangerous as suffering "from a serious mental illness, abnormality, or disorder <u>as a result of which</u> [the person] would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(6) (emphasis added). After a thorough analysis of the evidence presented, the Court is not left with a firm conviction that Mr. Charboneau's alcohol use disorder qualifies as "serious" under the Act because it currently does not constitute a serious functional impairment. Therefore, the Court concludes that the government has failed to prove the second prong by clear and convincing evidence.

Because no expert concluded that Mr. Charboneau suffers from a paraphilic disorder or any deviant sexual interest, the Court begins from a place of hesitation with respect to committing an individual under the Act who presents only with a substance abuse disorder. The link between substance abuse disorders and sexually offending is necessarily less direct than the link between paraphilic disorders and sexual offending, as paraphilias contain as diagnostic criteria deviant sexual interests clearly linked to sexual offending. Dr. Plaud explained this attenuated causal chain during the trial as the "prognosticator's two-step." In his report, Dr. Plaud wrote:

> In order to conclude that he is a sexually dangerous person, the following sequence must be shown to be in place in the future. First, we must be able to conclude that Mr. Charboneau will relapse with alcohol abuse, which does have some probability given his history. However, we must also be able to conclude that as a result of this alcohol

8

> relapse, Mr. Charboneau in the future will have serious difficulty in controlling (specifically) his sexual impulses. And we must be able to show that the risk of relapse is related not to general behavioral regulation and control, but rather to <u>sexual</u> violational impairment.

[RE 2 at 4.] In a very similar manner, Dr. Zinik in his deposition testified that:

> You know, my opinion is that if Mr. Charboneau were out in the community and he were drinking alcohol and he became intoxicated and he became sexually aroused and he were in the presence of a female, either a child or an adolescent or adult, related or unrelated, that he would be a danger to sexually assault that female.

[RE 3 at 18-19.] These analyses show how many conditions must be triggered in order for Mr. Charboneau to be sexually dangerous—he must take a drink, he must get drunk, he must become aroused, he must be in the presence of a female, etc. In other words, the evidence fails to show a nexus between Mr. Charboneau's alcohol use disorder and sexually offending.

Other courts have expressed the same hesitation in finding that alcohol use disorder is properly considered serious under the Act. The Fourth Circuit has never held that alcohol use disorder, standing alone, is enough to satisfy the second prong of the Adam Walsh Act. In *United States v. Antone*, 742 F.3d 151 (4th Cir. 2014), the Fourth Circuit reversed the district court order committing Mr. Antone on the basis of his substance abuse disorder and antisocial personality disorder, concluding that the district court erred for not crediting Mr. Antone's excellent conduct for the past fourteen years. In that case, the Fourth Circuit did not have occasion to review whether these two disorders properly met prong two of the Act because Mr. Antone's only issue on appeal was whether the district court erred in finding that he would have serious difficulty refraining from reoffending if released. *Id*. at 165. However, in explaining its reasons for reversal, the Fourth Circuit noted that antisocial personality disorder and polysubstance abuse disorder were "undisputably prevalent in the nationwide prison population." *Id.* at 169-70 (citing

9

*Kansas v. Crane,* 534 U.S. 407, 412 (2002); Jack Vognsen & Amy Phenix, *Antisocial Personality Disorder is Not Enough: A Reply to Sreeivasan, Weinburger, and Garrick,* 32 J. Am. Acad. Psychiatry Law 440, 442 (2004) (J.A. 1035–37) (noting that 50 to 70 percent of the ordinary prison population suffers from antisocial personality disorder); Dept. of Justice, Bureau of Justice Statistics, Christopher J. Mumola & Jennifer C. Karberg, *Drug Use and Dependence, State and Federal Prisoners, 2004* 1 (2004), available at http://www.bjs.gov/content/pub/pdf/dudsfp04.pdf (finding that 45 percent of federal prisoners met DSM–IV criteria for drug dependence or abuse)). Even though the Fourth Circuit did not reverse Mr. Antone's commitment because of the finding on the second prong, it certainly looked at the non-paraphilic disorders with suspicion.

Other courts have expressed similar hesitation in committing individuals without paraphilias. "Insofar as [Dr. Gutierrez's] testimony at the hearing would support a contention that alcohol and cannabis dependence qualify as serious mental disorders in this instance, the Court credits the opinions of Drs. North and Plaud and finds that they do not. To find to the contrary may well test the limits of what Congress contemplated when requiring that a § 4248 respondent suffer from a *serious* mental disorder." *United States v. Begay*, 5:11-hc-2197-BO, DE 33 at 7 n.3 (E.D.N.C. July 25, 2012). *See also United States v. Sneezer*, 5:08-hc-2107-H, DE 65 at 10 (E.D.N.C. November 30, 2012) (expressing the same hesitation and declining to decide the issue because the government had not shown that the respondent was sexually dangerous); *United States v. Julius*, 5:08-hc-2076-H, DE 59 at 12 (E.D.N.C. March 18, 2013) (expressing the same); *State v. Donald D.D.*, - - - N.E.3d - - -, 2014 WL 5430562 (N.Y. Oct. 28, 2014) (New York's highest court concluding that evidence that the respondent was diagnosed with antisocial

10

personality disorder, together with evidence of sex crimes, was *not* sufficient to support civil commitment).

The parties both acknowledged that while the Fourth Circuit has not so found, at least one district court has found that alcohol use disorder is sufficient to meet the second prong of the Adam Walsh Act. *United States v. Gloshay*, 5:08-hc-2051-BR, DE 91 (E.D.N.C. June 4, 2012). But, in *Gloshay*, the respondent did not call any experts (or witnesses of any kind) to testify on his behalf, and Mr. Gloshay continued to drink while in prison. This case is therefore distinguishable from *Gloshay*, and, in any event, since Mr. Gloshay did not appeal the decision, it is not binding on this Court.

With this legal background, the Court turns in particular to analyzing whether Mr. Charboneau's alcohol use disorder currently qualifies as a serious mental disorder. Like Mr. Antone and unlike Mr. Gloshay, Mr. Charboneau's near-perfect prison record and thirteen years of sobriety demonstrate to the Court that Mr. Charboneau is currently exercising control over his behaviors, and as Dr. Plaud explained, he is currently exhibiting "excellent general and sexual behavioral control." [RE 2 at 4.] Mr. Charboneau's thirteen years of sobriety–indeed perhaps his longest sober period in his life–undercuts any inference that alcoholism has a present grip upon Mr. Charboneau. *See United States v. Wooden*, 693 F.3d 440, 460 (4th Cir. 2012) (explaining that the Act "requires consideration of the grip strength of the mental illness on the inmate–the extent to which the inmate is controlled by the illness.").

The government emphasizes that Mr. Charboneau reoffended in 2003 after he was released from prison in 2000. From 2000 to 2003, Mr. Charboneau was in the community on supervision, attending treatment and working as a dishwasher. The Court does not find that the

11

2003 incident shows that Mr. Charboneau's alcohol disorder is presently serious. The fact that Mr. Charboneau was able to remain largely sober from 2000 to 2003 while on conditions shows the weak grip that his alcohol use disorder currently has on him. Mr. Charboneau has demonstrated control over his disorder for much of 2000 to 2003.

The Court need not reach the question of whether alcohol use disorder is ever sufficient to meet the second prong of the Act. However, in *this* case on *these* facts, the Court finds that the government has not proven by clear and convincing evidence that Mr. Charboneau currently suffers from a serious mental illness, abnormality, or disorder under the Adam Walsh Act as a result of which Mr. Charboneau would have serious difficulty refraining from reoffending.

### C. Serious Difficulty Refraining

Assuming *arguendo* that the Court found that the government met its burden on the second prong, the Court proceeds to analyze whether Mr. Charboneau, if released, "would have serious difficulty in refraining from sexually violent conduct or child molestation." 18 U.S.C. § 4247(a)(6). In *Kansas v. Crane*, 534 U.S. 407 (2002), the United States Supreme Court held that in order to civilly commit someone for sexual dangerousness "there must be proof of serious difficulty in controlling behavior." *Id.* at 413. This standard allows courts wide discretion in relying on a number of different—it does not have "a particularly narrow or technical meaning;" nor is it demonstrable with "mathematical precision." *Id.* If Mr. Charboneau's alcohol use disorder were to be considered a serious mental disease or defect within the meaning of the Act, the question would become whether he would have serious difficulty refraining from sexually violent conduct. In answering this inquiry, the Court finds most persuasive the opinion of Dr. Plaud.

Case 5:15-hc-02287-D   Document 46   Filed 02/03/17   Page 12 of 17

In order for the government to prevail, it must prove that his alcoholism must *cause* Mr. Charboneau's serious difficulty refraining. Accordingly, Dr. Plaud's analysis regarding the attenuated link between Mr. Charboneau's alcoholism and his sexual offending is relevant to the Court's analysis under the third prong of the Act as well. In addition to his opinion regarding the "prognosticator's two-step" at play here, Dr. Plaud emphasized Mr. Charboneau's excellent self-control in recent years and his more general criminal history. Since 2003, for over thirteen years, Mr. Charboneau has been incarcerated and been a model inmate. He has been sober now for 13 years. He has had no alcohol whatsoever in prison. Moreover, Mr. Charboneau has voluntarily participated in Alcoholics Anonymous at Butner.

Mr. Charboneau has a number arrests for non-sexual offenses committed under the influence of alcohol. *See supra* at 2-4. The fact that Mr. Charboneau does not always–or even often–engage in sexual misconduct when he drinks underscores the attenuated link between his disorder and his offending. His drinking has led to all sorts of rule violations, in the same vein as a garden-variety criminal.

Here, too, the government insists that Mr. Charboneau's 2003 offense on supervision is evidence of Mr. Charboneau's serious difficulty refraining. The Court is unpersuaded. Mr. Charboneau's ability to remain largely sober from 2000 to 2003 demonstrates the weak grip that his alcohol use disorder currently has on him. Indeed, this period shows that Mr. Charboneau is capable of abiding by the terms of his supervision, which he did for nearly three years.

The Court discounts the letter from Mr. Charboneau's family stating that they do not wish to be a part of his life. [GE 8.] The Court respects that Mr. Charboneau's family has been hurt by his actions and their decision not to be involved with Mr. Charboneau, but his family is

13

not in a position to weigh into the Court's legal analysis about whether Mr. Charboneau meets commitment criteria.

The Court affords some weight to Mr. Charboneau's age of 57. Sexual recidivism rates decrease with age, and "Mr. Charboneau is on the cusp of being in the lowest group comparatively in terms of measuring risk to reoffend sexually." [RE 2 at 3.] The Court also considers the recidivism rates associated with Mr. Charboneau's actuarial scores, but affords them less weight than Mr. Charboneau's own conduct and the causal link (or lack thereof) between his behavior and any mental disorder.

The Court considered the testimony of Dr. Kara Holden, who testified about Mr. Charboneau's performance in the CTP since February of 2016. The government emphasized one of Dr. Holden's treatment notes repeatedly throughout the hearing in which Dr. Holden wrote that Mr. Charboneau told her that he was sexually dangerous. [GE 27.] The Court has considered this, but does not give it much weight for multiple reasons. First, all of the experts agree that Mr. Charboneau has difficulties with language. This was evident to the Court during his testimony, from reading Mr. Charboneau's deposition, and from reading Mr. Charboneau's verbatim comments included in the expert reports. Dr. Holden's notes are clearly paraphrased—they are not representative of the manner in which Mr. Charboneau speaks. Accordingly, it is unclear what exactly he said. Moreover, it is also unclear what exactly he meant to communicate. Additionally, as noted by Dr. Plaud, Mr. Charboneau is a people pleaser and may have said something that he thought Dr. Holden, an authority figure, desired him to say. This treatment note simply does not carry enough indicia of reliability or clarity to be a meaningful factor weighing in favor of commitment.

14

The government asked each witness whether it would be beneficial for Mr. Charboneau to continue in treatment and whether it would disrupt his treatment if he were to be released. The government misses the mark. The question before the Court is not whether Mr. Charboneau would benefit from treatment. If Mr. Charboneau does not meet criteria for commitment, it is beside the point if Mr. Charboneau would benefit from completion of the CTP. The Court is heartened that Mr. Charboneau has volunteered for CTP and is regularly attending Alcoholics Anonymous and believes that his willingness to attend treatment bodes well for his future success on supervised release.

To conclude, the Court circles back again to the analysis in *United States v. Antone*. Just like Mr. Antone, Mr. Charboneau has displayed excellent self-regulation in prison for the last 13 years. The Fourth Circuit reversed the district court because of its "inadequate consideration of certain 'substantial evidence'—namely Antone's behavior in the past fourteen years." 742 F.3d at 165. The government asks this Court to do the same thing—ignore the substantial evidence of Mr. Charboneau's sobriety, excellent prison conduct, willingness to get treatment. The Court is unpersuaded.

"In the absence of clear and convincing proof that a serious mental impairment causes an individual to have serious difficulty in controlling his behavior, the constitution requires reliance on the criminal law, rather than a civil commitment, to deal with that risk." *United States v. Wilkinson*, 646 F. Supp. 2d 194, 209 (D. Mass 2009). As the government has not presented such clear and convincing proof, Mr. Charboneau may not be civilly committed.

**IV. CONCLUSION**

For the foregoing reasons, the government has failed to show by clear and convincing evidence that Mr. Charboneau suffers from a serious mental illness, abnormality, or disorder, as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released. Accordingly, the Court concludes that Mr. Charboneau is not a sexually dangerous person under the Adam Walsh Act and ORDERS that the government release Mr. Charboneau forthwith to the custody and supervision of the appropriate United States Probation Officer.

Respectfully submitted on this 3rd day of February, 2017.

> THOMAS P. MCNAMARA
> Federal Public Defender
>
> /s/ Katherine Shea
> KATHERINE SHEA
> Assistant Federal Public Defender
> Attorney for Respondent
> Office of the Federal Public Defender
> 150 Fayetteville Street, Suite 450
> Raleigh, North Carolina 27601
> Telephone: 919-856-4236
> Fax: 919-856-4477
> E-mail: kat_shea@fd.org
> Member of the New York State Bar
> LR 57.1 Counsel
> Appointed

*CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that a copy of the foregoing was served upon:

**Christopher M. Anderson**
**Michael James**
**G. Norman Acker, III**
U.S. Attorney's Office
310 New Bern Ave., Suite 800
Raleigh, NC 27601-1461
Email: michael.anderson7@usdoj.gov
Email: mike.james@usdoj.gov
Email: norman.acker@usdoj.gov


by electronically filing the foregoing with the Clerk of Court on February 3, 2017, using the CM/ECF system which will send notification of such filing to the above.

This the 3rd day of February, 2017.

                                              /s/ Katherine Shea
                                              KATHERINE SHEA
                                              Assistant Federal Public Defender
                                              Attorney for Respondent
                                              Office of the Federal Public Defender
                                              150 Fayetteville Street, Suite 450
                                              Raleigh, North Carolina 27601
                                              Telephone: 919-856-4236
                                              Fax: 919-856-4477
                                              E-mail: kat_shea@fd.org
                                              Member of the New York State Bar
                                              LR 57.1 Counsel
                                              Appointed