**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 17-7306**

───────────

UNITED STATES OF AMERICA,

Petitioner - Appellee,

v.

BLAKE CHARBONEAU,

Respondent - Appellant.

───────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:15-hc-02287-D)

───────────

Argued:  November 1, 2018                    Decided:  February 6, 2019

───────────

Before MOTZ, DUNCAN, and QUATTLEBAUM, Circuit Judges.

───────────

Affirmed by published opinion.  Judge Quattlebaum wrote the opinion, in which Judge Motz and Judge Duncan joined.

───────────

**ARGUED:**  Jaclyn Lee DiLauro, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Michael Gordon James, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Louis C. Allen, Acting Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant.  Robert J. Higdon, Jr., United States Attorney, G. Norman Acker III, Civil Chief, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

───────────

QUATTLEBAUM, Circuit Judge:

The district court found Blake Charboneau to be a "sexually dangerous person" under the Adam Walsh Child Protection and Safety Act of 2006 (the "Act").[1] 18 U.S.C. § 4247(a)(5). As a result, the district court committed Charboneau to the custody of the Attorney General. In this appeal, Charboneau challenges the district court's determination that he met the criteria for a sexually dangerous person. In doing so, Charboneau raises a legal and a factual question. The legal question is whether Charboneau must be diagnosed with a paraphilic disorder[2] to be committed under the Act. The factual question is whether the record supported the district court's findings under the clear error standard of review. Finding that the Act does not require a diagnosis with a paraphilic disorder and that the district court's findings were amply supported by the record, we affirm.

## I.

Before turning to the facts of this case, we summarize the pertinent provisions of the Act. The Government commences a proceeding under the Act by filing a certification that an inmate is a sexually dangerous person. 18 U.S.C. § 4248(a). The proceeding is a

---

[1] The Act is named after Adam Walsh, who was abducted from a Sears department store in Florida in 1981 and brutally murdered.

[2] A paraphilic disorder diagnosis is appropriate under the Diagnostic and Statistical Manual of Mental Disorders where a person has an "intense and persistent sexual interest" that does not involve "physically mature, consenting human partners" and "is currently causing distress or impairment to the individual" or "personal harm, or risk of harm, to others." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 685−86 (5th ed. 2013).

civil, not criminal, proceeding. *See id.* § 4248. The Government then bears the burden of proving by clear and convincing evidence that: (1) the individual has previously "engaged or attempted to engage in sexually violent conduct or child molestation" (the prior conduct element), *id.* § 4247(a)(5); (2) the individual currently "suffers from a serious mental illness, abnormality, or disorder" (the serious mental illness element), *id.* § 4247(a)(6); and (3) as a result of such condition, the individual "would have serious difficulty in refraining from sexually violent conduct or child molestation if released" (the serious difficulty element), *id.*

If the Government prevails, the individual is ordered into the custody of the Attorney General. *Id.* § 4248(d). The Attorney General must then make reasonable efforts to transfer the individual to the State in which the person is domiciled or was tried if the State will assume responsibility for his custody, care and treatment. *Id.* If the State will not assume such responsibility, the Attorney General must place the individual in a suitable facility until the State assumes responsibility or the individual's condition is such that he is no longer sexually dangerous. *Id.* The Act also provides a mechanism for relief from an order of commitment. A respondent may file a motion with the district court asking for his discharge from commitment at any time 180 days after his original commitment. *Id.* § 4247(h). In addition, the director of the facility must prepare annual reports concerning the respondent's mental condition and his need for continued

3

commitment. *Id*. § 4247(e)(1)(B). In sum, an order of commitment means that, even after an individual has served his entire criminal sentence, he remains in custody.[3]

## II.

### A.

Turning now to the background of this case, Charboneau lived on the Devils Lake Sioux Reservation in Fort Totten, North Dakota[4] his entire life, with the exceptions of mental health treatment, school and prison placements. Around the time he turned twelve, Charboneau began abusing alcohol and inhalants. He dropped out of school in the ninth grade. Charboneau has had frequent contact with the criminal justice system over the course of his life. Since 1978, law enforcement officers arrested or took Charboneau into custody over thirty times for various crimes ranging from disorderly conduct to sexual assault. Virtually all those offenses occurred while Charboneau was under the influence of alcohol. Among those crimes were four arrests for sexually violent conduct, all of which occurred while Charboneau was intoxicated.[5]

In 1982, Charboneau sexually assaulted his twenty-three-year-old female cousin. Charboneau claimed to be so intoxicated at the time of the offense that he was unable to

---

[3] The Supreme Court upheld the constitutionality of the Act in *United States v. Comstock*, 560 U.S. 126, 129 (2010).

[4] The Devils Lake Sioux Reservation, established in 1867, is now known as the Spirit Lake Reservation. The largest community on the reservation is Fort Totten, where Charboneau lived.

[5] The details of this conduct, some of which are graphic, are contained in the Joint Appendix ("J.A.").

4

remember the assault when he was questioned by the police the following day. Charboneau pled guilty for this offense and was sentenced to prison.

In August 1987, Charboneau committed his second sexual offense. Charboneau entered a woman's home, forcibly removed her clothes and attempted to have sexual intercourse with her on the kitchen floor. Law enforcement officials on Charboneau's reservation who investigated the matter did not formally charge Charboneau with sexual assault. However, Charboneau admitted to these actions at the commitment hearing held before the district court.

In July 1988, Charboneau committed his third sexual offense. After a family picnic, Charboneau, while intoxicated, took his ten-year-old daughter to an area obscured by bushes and sexually assaulted her. Charboneau was found guilty in federal court of aggravated sexual abuse by force and sentenced to 168 months in prison followed by five years of supervised release. Charboneau began his period of supervised release in October 2000.

While on supervised release in 2003, Charboneau committed his fourth sexual offense. Charboneau, again intoxicated, sexually assaulted his niece. Charboneau pled guilty in state court to sexual contact with a person incapable of consenting. The state court sentenced him to ten years of imprisonment. In addition, because Charboneau was on supervised release pursuant to his previous federal sentence at the time, the federal court found that Charboneau violated the terms of his supervised release and sentenced him to thirty-six months of confinement and twenty-four months of supervised release to commence after Charboneau completed his term of imprisonment at the state level.

5

B.

In December 2015, while Charboneau was in federal prison at Federal Correctional Institution ("FCI") Butner serving his sentence for his 2003 supervised release violation, the Government initiated the civil commitment proceedings by filing a certification alleging Charboneau was a sexually dangerous person under the Act. At that time, Charboneau's anticipated date of release was February 21, 2016. On January 27, 2017, the district court held a commitment hearing on the Government's certification. Because of its relevance to our review, we will summarize the testimony at the commitment hearing.

The Government called Dr. Kara Holden, a clinical psychologist who works in the Commitment and Treatment Program at FCI Butner. Dr. Holden testified about her treatment of Charboneau. She remarked that Charboneau had cognitive and communication difficulties and initially was very reserved. She reported that Charboneau blamed the victims for his crimes and even saw himself as a victim. She testified that although Charboneau received treatment for alcohol abuse in the program at FCI Butner, he denied that he had an alcohol problem. Dr. Holden also testified that Charboneau became more comfortable communicating with her as treatment progressed. In December 2016, Charboneau admitted to Dr. Holden for the first time that he had a sexual deviance problem, needed treatment and felt that he was sexually dangerous.

Next, the Government called Dr. Christopher North, Dr. Heather Ross and Dr. Gary Zinik as expert witnesses. Dr. North is a clinical psychologist appointed by the district court to conduct an evaluation of Charboneau. Dr. Ross is a sex offender forensic

6

psychologist at the Bureau of Prisons. Dr. Zinik is a forensic psychologist with a private practice in California.

All three of the Government experts opined that Charboneau was a sexually dangerous person under the Act. As to the prior conduct element of the Act, the Government experts agreed that Charboneau had engaged in sexually violent conduct in the past based on his prior sexually violent conduct.

Regarding the serious mental illness element, the Government experts agreed that, while he did not suffer from a paraphilic disorder, Charboneau suffers from alcohol use disorder which satisfied the serious mental illness element of the Act. In addition to alcohol use disorder, Dr. Zinik found that Charboneau suffers from mixed personality disorder based on multiple schizotypal and schizoid characteristics.

As to the serious difficulty element, the Government experts all opined that, because of his alcohol use disorder, Charboneau would have serious difficulty refraining from future sexually violent conduct. Dr. Zinik further opined that because of Charboneau's mixed personality disorder, combined with his alcohol use disorder, Charboneau would have serious difficulty refraining from future sexually violent conduct.

Charboneau also testified at the commitment hearing. Charboneau testified that he has difficulty expressing how he feels and that others have difficulty understanding him. Charboneau maintained that despite the presence of alcohol in prison, he has remained sober. He testified that he also has not committed any sexually violent acts in jail. He testified that he attends weekly Alcoholics Anonymous ("AA") meetings and was in the

7

second of four phases of the Commitment and Treatment Program at the time of the commitment hearing.

Last, Charboneau's expert forensic psychologist, Dr. Joseph J. Plaud, testified. Dr. Plaud agreed that Charboneau met the criteria for the prior conduct element of the Act. As to the serious mental illness element, Dr. Plaud opined that Charboneau did not have a personality or paraphilic disorder. Without one of those two conditions, Dr. Plaud did not believe that Charboneau's alcohol use disorder met the second requirement under the Act. Dr. Plaud noted that Charboneau struggled with alcohol use disorder for most of his adult life. Based on Charboneau's history, Dr. Plaud testified he would expect more than four instances of sexually violent conduct if alcohol use disorder caused Charboneau to sexually reoffend. Because Charboneau had abused alcohol on many occasions that did not result in sexually violent conduct, Dr. Plaud opined that Charboneau's alcohol use disorder did not constitute a serious mental illness under the Act. As for the serious difficulty element, Dr. Plaud believed that it is impermissible to assume that Charboneau will experience an alcohol relapse and then assume that, if he relapses, he will commit a sexual offense. Therefore, Dr. Plaud concluded Charboneau did not qualify as a sexually dangerous person under the Act.

## C.

On September 28, 2017, the district court recited its findings of fact and conclusions of law. The district court correctly set forth the required elements under the Act and stated that the Government was required to prove those elements by clear and convincing evidence. The district court found that Charboneau previously engaged in

8

sexually violent conduct or child molestation. It further found that Charboneau had a serious mental illness, abnormality or disorder in the form of a mixed personality disorder working in conjunction with alcohol use disorder, as opined by Dr. Zinik and, alternatively, in the form of alcohol use disorder as opined by the Drs. Zinik, Ross and North. Finally, the district court found that based on his mental illnesses, Charboneau would have serious difficulty refraining from sexually violent conduct due to his serious mental illness, abnormality or disorder.

In summary, based on the facts presented at the commitment hearing, the district court concluded that the Government met its burden to establish by clear and convincing evidence that Charboneau is a sexually dangerous person within the meaning of the Act. As a result, the district court ordered Charboneau committed to the custody of the Attorney General until he is no longer a sexually dangerous person.

Charboneau filed a timely notice of appeal, and we have jurisdiction of this matter pursuant to 28 U.S.C. § 1291.

## III.

Before considering Charboneau's grounds for appeal, we describe our standard for review. "The purpose of standards of review is to focus reviewing courts upon their proper role when passing on the conduct of other decision-makers." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 320 (4th Cir. 2008). "Standards of review are thus an elemental expression of judicial restraint, which, in their deferential varieties, safeguard the superior vantage points of those entrusted with primary decisional responsibility." *Id.* at 320−21. The key characteristic of standards of review is that they

9

designate a primary decision-maker other than the reviewing court and designate the instrument−deference−with which that primacy is to be maintained. *Id*. at 321.

In this case, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Antone*, 742 F.3d 151, 158 (4th Cir. 2014). The clear error standard serves to protect the district courts' primacy as triers of fact. *Anderson v. Bessemer City*, 470 U.S. 564, 573−575 (1985). A court reviewing for clear error may not reverse a lower court's factual findings simply because it would have reached a different decision in the case. *United States v. Wooden,* 693 F.3d 440, 451 (4th Cir. 2012). Instead, a reviewing court must ask whether, based on the entire body of evidence, "it is left with the definite and firm conviction that a mistake has been committed." *Id*. (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)) (internal quotation marks omitted). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id*. (quoting *Anderson*, 470 U.S. at 573−74) (internal quotation marks omitted). Furthermore, when a trial judge makes a finding "based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson*, 470 U.S. at 575.

IV.

On appeal, Charboneau does not challenge the district court's findings on the prior conduct requirement of the Act. Charboneau raises two challenges to the district

10

court's finding on the serious mental illness element. First, he claims the district court erred in concluding the requirement of a serious mental illness, abnormality or disorder can be met without a paraphilic disorder. Second, he contends the district court erred in crediting Dr. Zinik's opinion that Charboneau suffered from a mixed personality disorder which, combined with his alcohol use disorder, satisfies the Act's serious mental illness requirement because that opinion was against the weight of the evidence.

Charboneau also makes two challenges to the district court's findings regarding the third requirement under the Act, the serious difficulty element. First, Charboneau argues the district court erred in concluding that there is an adequate causal connection between any serious mental illness in his case and sexually violent conduct or child molestation. Second, Charboneau contends the district court erred in failing to give adequate credit to the last fifteen years of his life in which he neither consumed alcohol or committed a sexual offense while incarcerated.

We address each argument in turn.

## A.

We first consider whether a paraphilic disorder is required to fulfill the serious mental illness element. The Act provides that a person is "sexually dangerous to others" if he or she "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(6). Generally, if the statute's language is plain, the sole function of the courts is to enforce the statute according to its

11

terms, unless the disposition required by the text is absurd. *Crespo v. Holder*, 631 F.3d 130, 133 (4th Cir. 2011).

The plain language of the statute does not require a respondent to be diagnosed with a paraphilic disorder to satisfy the serious mental illness element of the Act. Likewise, no controlling precedent requires such a diagnosis. Congress could have easily added language requiring a paraphilic disorder if that was its intent. But the Act as written does not require any specific mental illness, abnormality or disorder to satisfy the serious mental illness element. As this Court has observed, "one will search § 4247(a)(6) in vain for any language purporting to confine the universe of qualifying mental impairments within clinical or pedagogical parameters." *United States v. Caporale*, 701 F.3d 128, 136 (4th Cir. 2012).

In *Caporale*, this Court held that the Act's reference to a serious mental illness, abnormality, or disorder is not limited to those disorders specifically delineated in the Diagnostic and Statistical Manual of Mental Disorders. *Id.* at 136−37. This Court also noted that the statute could have been drafted to follow certain clinical norms or definitions, "but inasmuch as Congress chose not to do so, it has been left to the courts to develop the meaning of 'serious mental illness, abnormality, or disorder' as a legal term of art." *Id.* at 136.

Consistent with our precedent, we find the Act does not require a diagnosis of a paraphilic disorder to meet the serious mental illness element of the Act. And contrary to Charboneau's assertion, this ruling does not dramatically expand the reach of the Act. In all cases, the government must also show by clear and convincing evidence that an

individual "would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(6). In the absence of a paraphilic disorder diagnosis, the government surely faces a steeper climb in establishing the causal link between an individual's serious mental illness and their ability to refrain from sexually violent conduct in the future. We hold only that the Act does not preclude the government from making this showing.

B.

Having determined that the Act does not require a paraphilic disorder, we turn to the district court's finding on the serious mental illness requirement. As set forth below, we conclude that the district court did not clearly err in finding that Charboneau suffers from a serious mental illness.

Charboneau claims that the district court erred in finding that the Government carried its burden to establish the serious mental illness element based on Charboneau's diagnosis of mixed personality disorder and alcohol use disorder. Charboneau takes issue with this finding because Dr. Zinik was the only expert to conclude that Charboneau suffered a mixed personality disorder that, when taken together with his alcohol use disorder, met the serious mental illness element of the Act. Charboneau also argues that Dr. Zinik's opinion that he suffered from mixed personality disorder conflicted with the other two Government experts that testified at his hearing.

To address this argument on appeal, it is important to remember our standard of review. As set forth above, a factfinder is entitled to great deference in judging the credibility of witnesses and in weighing the evidence. *Anderson*, 470 U.S. at 575. We are

13

especially reluctant to set aside a finding based on the trial court's evaluation of conflicting expert testimony because "[e]valuating the credibility of experts and the value of their opinions is a function best committed to the district courts, and one to which appellate courts must defer." *United States v. Bell*, 884 F.3d 500, 508 (4th Cir. 2018) (quoting *United States v. Heyer*, 740 F.3d 284, 292 (4th Cir. 2014)) (internal quotation marks omitted). Accordingly, the question for the district court was not how many expert witnesses supported the respective diagnoses. Instead, the question was which witnesses provided the most credible and compelling testimony. "[T]he ultimate measure of testimonial worth is quality and not quantity." *Carmell v. Texas*, 529 U.S. 513, 574−75 (2000) (quoting *Weiler v. United States*, 323 U.S. 606, 608 (1945)) (internal quotation marks omitted).

The district court was in the best position to analyze the expert opinions offered at the commitment hearing and, from the record, it is evident that it did. The district court explained in detail why it was persuaded by Dr. Zinik's diagnostic finding that Charboneau met criteria for a mixed personality disorder with schizotypal and schizoid features. The district court acknowledged that Dr. Zinik was the only expert to offer that diagnosis but found Dr. Zinik's explanation of Charboneau's mental condition compelling and consistent with the record in Charboneau's unique case. While the other witnesses did not come to the same conclusion, the district court observed that Dr. Zinik's opinion was consistent with the diagnosis of other medical providers that treated Charboneau in the past. The district court also noted that Dr. Zinik persuasively

explained that Charboneau's diagnoses with alcohol use disorder and mixed personality disorder with schizotypal and schizoid features are interrelated and additive.

The district court based its finding that Charboneau suffered from a mixed personality disorder on the facts in the record and careful consideration of the opinion and reasoning of Dr. Zinik whose credentials are not at issue. We therefore defer to the district court's decision to credit Dr. Zinik's opinion that Charboneau's mixed personality disorder together with his alcohol use disorder satisfies the serious mental illness element under the Act.

## C.

We now turn to the third element required by the Act–the serious difficulty element. Charboneau argues the district court erred in concluding the Government met its burden to prove, by clear and convincing evidence, that there is an adequate causal connection between Charboneau's serious mental illness and future sexually violent conduct or child molestation. To address this challenge, we will first examine the district court's analysis of the serious difficulty element. Second, we will address Charboneau's claims that the district court erred in its analysis.

### 1.

On this issue, the district court again found Dr. Zinik's testimony, which included his opinion about Charboneau's mixed personality disorder, most compelling. As detailed above, Dr. Zinik testified that Charboneau would have serious difficulty refraining from sexually violent conduct due to his mixed personality disorder combined with his alcohol use disorder. The district court noted the Dr. Zinik reviewed the pertinent records,

15

interviewed Charboneau, considered the other expert opinions and synthesized the evidence in a persuasive manner in his report. The district court considered and found persuasive Dr. Zinik's analysis that concluded Charboneau had a high risk of future sexually violent behavior and found an absence of protective factors[6] against such future behavior. The district court found Dr. Zinik's testimony regarding the serious difficulty prong to be the most persuasive expert testimony among all the experts.

2.

Charboneau claims that the district court erred by failing to consider evidence indicating Charboneau would not have serious difficulty refraining from sexually violent conduct as well as inconsistencies in the opinions of the Government's experts. First, Charboneau claims the district court failed to consider evidence that Charboneau, at the time of the commitment hearing, had started participating in sex offender treatment and AA meetings. However, the record reveals that the district court did consider this evidence. Specifically, the district court noted that up until the commitment hearing on this matter, Charboneau persistently denied that he had any alcohol problem even considering his numerous arrests for alcohol related offenses, both sexual and nonsexual. The district court further noted that Charboneau was in sex offender treatment and under the close supervision of U.S. Probation officers when he committed his last sexual offense. The district court also cited its consideration of actuarial risk assessments,

_____

[6] Protective factors are considered in a recidivism risk assessment and decrease the risk for future sexual reoffense. J.A. 410.

Charboneau's impulsiveness when not in a custodial setting and his historical offenses as support for its finding that the serious difficulty element of the Act was met.

Second, Charboneau claims the district court failed to consider Dr. Plaud's opinion that if Charboneau lacked volitional control because of his alcohol use disorder, then Charboneau would have had many more instances of sexual violence. Once again, however, the district court considered this evidence. The district court found that testimony of Dr. Plaud was not as credible as Dr. Zinik's explanation that Charboneau would have serious difficulty refraining from sexual violence based on the risk assessment Dr. Zinik conducted and the absence of protective factors. Thus, we find no clear error in the district court's conclusion that Charboneau's alcohol use and personality disorders were inextricably linked with his acts of sexual violence.

Third, Charboneau argues the district court failed to consider the absence in the record of continued deviant thoughts by Charboneau. But the district court did, in fact, consider the testimony of Dr. Plaud and Dr. Zinik on this point. The district court found Dr. Zinik the most compelling in explaining how Charboneau can have serious difficulty in refraining from further sexually violent conduct in the absence of continued deviant thoughts.[7]

The record reveals that the district court adequately considered Dr. Plaud's testimony and the evidence Charboneau argues merits reversal. While Charboneau claims

---

[7] Charboneau also argues the district court erred by failing to adequately consider Charboneau's good behavior while in prison. Because Charboneau raised this issue as a separate ground for appeal, we address it in Section IV., D. below.

17

the district court overlooked evidence, he does not direct this Court to any evidence that the district court failed to consider or any error in the reports or opinions of Dr. Zinik, Dr. North or Dr. Ross that would require reversal.[8] In reality, Charboneau simply argues that the district court should have reached a different result. But it is not this Court's role to re-weigh the evidence and impose a different result when the district court does not commit legal error and bases its decision on evidence in the record. Accordingly, we find no clear error in the district court's ruling.

D.

In his final assignment of error, Charboneau contends the district court erred in failing to give adequate credit to the last fifteen years of Charboneau's life in which he neither consumed alcohol or committed a sexual offense while incarcerated. Charboneau contends that our prior opinion in *United States v. Antone*, 742 F.3d 151 (4th Cir. 2014), requires reversal. In *Antone*, this Court reversed an order of commitment under the Act because the district court failed to adequately consider the recent conduct of the respondent while incarcerated. 742 F.3d at 165.

However, while both Antone and Charboneau behaved appropriately in prison, this case is factually distinguishable from *Antone*. Unlike in *Antone*, the district court here specifically acknowledged that it "must fully consider and account for why a

---

[8] The factors and evidence considered by the district court regarding the serious difficulty prong are consistent with the prior decisions of this Court. *See United States v. Bell*, 884 F.3d 500, 508 (4th Cir. 2018); *United States v. Wooden*, 693 F.3d 440, 462 (4th Cir. 2012); *United States v. Hall*, 664 F.3d 456, 464 (4th Cir. 2012).

18

detainee's positive incarceration conduct is overshadowed by other factors" that would warrant civil commitment. J.A. 301. The district court then proceeded to analyze Charboneau's conduct while incarcerated.[9]

The district court first acknowledged that all the experts agreed Charboneau had generally acted as a model prisoner while incarcerated. But the district court considered Charboneau's behavior during his current prison term along with his behavior during and after his incarceration resulting from his 1982 conviction. Then, Charboneau also behaved in an exemplary fashion while in prison. However, once released, Charboneau abused alcohol and reoffended violently and sexually, even after acting as a model prisoner. Antone had no similar history of violently reoffending upon release. Therefore, the district court's consideration of this evidence distinguishes the current case from *Antone*.

Moreover, the district court considered and found persuasive Dr. Zinik's report and testimony that "explain[ed] why Charboneau comports himself well in a controlled institutional environment but reverts to drinking alcohol, lawbreaking, and sexual violence in the community." J.A. 302. The district court also acknowledged that Dr. North and Dr. Ross provided persuasive explanations on this point.

---

[9] Significantly, this Court recently affirmed a district court's order of commitment under the Act where there were temporal gaps in the respondent's sexual offenses. This Court affirmed that such gaps do not preclude a finding that the respondent would have serious difficulty refraining from future sexually violent behavior. *United States v. Bell*, 884 F.3d 500, 509−10 (4th Cir. 2018).

19

Further, the district court noted Charboneau's persistent denial that he has an alcohol use problem and the results of actuarial risk assessments indicating his difficulty in refraining from future sexually violent conduct. To the district court, this evidence outweighed Charboneau's recent good conduct. Based on this analysis, the district court found that the Government met its burden in establishing that Charboneau would have serious difficulty in refraining, even considering his good behavior while incarcerated.

In summary, the district court adequately considered Charboneau's conduct while incarcerated and made the determination that other factors outweighed his good behavior in prison. Reversal is only appropriate if we are left with a definite and firm conviction that a mistake has been made after we review the district court's mixed findings. *Antone*, 742 F.3d at 165. Here, we are left with no such definite and firm conviction. Therefore, we affirm the district court's order.

## V.

For the reasons set forth above, we conclude that the appellate record supports the district court's conclusion that Charboneau is a sexually dangerous person within the meaning of 18 U.S.C. § 4247(a)(5).[10] Based on the record before it, the district court did not clearly err when it found that the Government established the criteria for commitment

---

[10] Of course, this does not mean that Charboneau will be sexually dangerous forever. The Act, as set forth above, provides a path by which Charboneau may seek discharge. 18 U.S.C. §§ 4247(e)(1)(B), 4247(h). In determining whether Charboneau should be released and reintegrated into society in the future, the district court should consider Charboneau's behavior in prison and his progress in treatment, as well as the rest of the record before the district court at the time of any such request for discharge.

20

by clear and convincing evidence and ordered Charboneau committed to the custody of

the United States Attorney General. Accordingly, the judgment of the district court is

*AFFIRMED*.

21